# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| XAVIER BENITES,<br>*Plaintiff*<br><br>v.<br><br>WESTERN WORLD INSURANCE<br>COMPANY,<br>*Defendant* | §<br>§<br>§<br>§   Case No. 1:21-CV-1093-RP<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   THE HONORABLE ROBERT PITMAN
         UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Xavier Benites' Motion for Partial Summary Judgment, filed December 28, 2021 (Dkt. 4); Defendant Western World Insurance Company's Motion for Summary Judgment, filed June 14, 2022 (Dkt. 10); and the parties' response and reply briefs. The District Court referred the Motions to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. *See* Text Orders entered April 25, 2022 and July 1, 2022.

## I.   Background

Plaintiff Xavier Benites ("Benites"), an Austin, Texas resident, owns a condominium unit in the BeachGate Condo Suites and Motel ("BeachGate Condos") in Port Aransas, Texas. In this insurance coverage dispute, Benites seeks a declaratory judgment that Western World Insurance Company ("Western") owes him a duty to defend and indemnify in an underlying premises liability state court action.

**A. The Policy**

On December 14, 2016, Western issued a commercial general liability insurance policy (Policy No. NPP844379) to BeachGate Owners Association, Inc., the homeowners association for the BeachGate Condos, for the policy period December 12, 2016 through December 21, 2017. Dkt. 4-2 (the "Policy"). The Policy provides that Western "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 27.

While BeachGate was the sole insured named in the Policy, the Policy also contains an "Additional Insured – Condominium Unit Owners" endorsement, which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises **which is not reserved for that unit owner's exclusive use or occupancy**.

*Id.* at 44 (emphasis added). The Policy does not define "exclusive use or occupancy."

**B. The Underlying Suit**

In July 2017, a group of family members and friends (the "Underlying Plaintiffs") went to Port Aransas on vacation and rented a condominium unit at the BeachGate Condos. Underlying Plaintiffs' Second Amended Petition ("Underlying Petition"), Dkt. 4-1 ¶ 4.1. The Underlying Plaintiffs were assigned to Unit 121,[1] the condominium owned by Benites. *Id.* ¶ 2.3. On the evening of July 8, 2017, the Underlying Plaintiffs congregated on the upstairs outdoor balcony attached to their unit when, "suddenly and without warning," the balcony collapsed and "Plaintiffs were thrown to the ground with the collapsing balcony and suffered injuries." *Id.* ¶ 4.2.

---

[1] The Underlying Plaintiffs also refer to the unit as "Unit 2021." Dkt. 4-1 ¶ 2.3.

2

On February 28, 2018, the Underlying Plaintiffs filed a lawsuit against BeachGate and Benites, alleging negligence, negligent undertaking, gross negligence and premises liability. *Brubaker v. Beachgate Owners Association, Inc.*, No. D-1-GN-18-000970 (126th Dist. Ct., Travis County, Tex. Feb. 28, 2018) (the "Underlying Suit"). Western is providing a defense under a reservation of rights to BeachGate in the Underlying Suit. Dkt. 10 at 3.

Benites also sought a defense from Western as an "additional insured" under the Policy's Additional Insured Endorsement. *Id.* Benites argued that the balcony attached to his unit was a "General Common Element" of the property for which the BeachGate HOA was responsible. Dkt. 2-4 at 12. Western disagreed and found that the balcony was reserved for Benites' "exclusive use or occupancy," and thus, Benites could not be considered an additional insured under the Policy. *Id.* at 9. Accordingly, Western denied the claim.

Benites subsequently filed a third-party claim against Western in the Underlying Suit, alleging that Western has a duty to defend and indemnify him. *Id.* at 4. The state court then granted Western's motion to sever Benites' third-party action from the remaining claims in the Underlying Suit. Dkt. 2-9. On December 2, 2021, Western removed the severed action to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441(b).

Both parties now move for summary judgment on whether Western has a duty to defend Benites in the Underlying Suit. Western also moves for summary judgment on duty to indemnify. The outcome of both parties' Motions for Summary Judgment rests on whether Benites is an additional insured under the Policy.

## II.   Legal Standards

### A.  Rule 56

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact

3

and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

**B. Texas Insurance Law**

Where federal jurisdiction is based on diversity of citizenship, a federal court looks to the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). The parties do not dispute that Texas law applies.

"Insurance policies are interpreted under the rules of construction that apply to contracts in general. The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198-99 (Tex. 2022). Under Texas law, an insurer may have two responsibilities relating to coverage: the duty to defend and the duty to indemnify." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The Texas Supreme Court has explained that the two duties are distinct and to be decided separately. *Gilbane Bldg.*, 664 F.3d at 594. The duty to defend is broader; therefore, "an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008).

Under the Texas "eight-corners" rule, to determine whether an insurer has a duty to defend its insured, courts look to (1) the pleadings against the insured, and (2) the terms of the insurance policy. *Monroe*, 640 S.W.3d at 199. Under the rule, "the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." *Id.* The rule's name derives from the fact that only two documents ordinarily are relevant

5

to the determination of the duty to defend: the policy and the plaintiff's pleading. Extrinsic evidence or facts outside the pleadings generally are not considered. *Id.* But the eight-corners rule is not absolute. The Texas Supreme Court recently clarified that while the rule remains the initial inquiry to be used to determine whether a duty to defend exists, courts may consider extrinsic evidence in the following circumstances:

> But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201-02.

The duty to indemnify, on the other hand, is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 447 (5th Cir. 2022). "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* at 448-49 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004)).

### III. Analysis

To determine whether Western has a duty to defend Benites in the Underlying Suit, the Court first must determine whether Benites qualifies as an "additional insured" under the Policy. *Gilbane Bldg.*, 664 F.3d at 594. If Benites demonstrates that he qualifies as an additional insured, the Court then must determine whether the facts alleged in the Underlying Suit are sufficient to trigger the duty to defend under the policy. *Id.* "An affirmative answer to both is required to hold that there

to the determination of the duty to defend: the policy and the plaintiff's pleading. Extrinsic evidence or facts outside the pleadings generally are not considered. *Id.* But the eight-corners rule is not absolute. The Texas Supreme Court recently clarified that while the rule remains the initial inquiry to be used to determine whether a duty to defend exists, courts may consider extrinsic evidence in the following circumstances:

> But if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201-02.

The duty to indemnify, on the other hand, is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 447 (5th Cir. 2022). "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* at 448-49 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004)).

### III.   Analysis

To determine whether Western has a duty to defend Benites in the Underlying Suit, the Court first must determine whether Benites qualifies as an "additional insured" under the Policy. *Gilbane Bldg.*, 664 F.3d at 594. If Benites demonstrates that he qualifies as an additional insured, the Court then must determine whether the facts alleged in the Underlying Suit are sufficient to trigger the duty to defend under the policy. *Id.* "An affirmative answer to both is required to hold that there

is a duty to defend." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). Benites, as the party alleging coverage, bears the burden on each of these issues. *Id.*

### A. Benites' Insured Status

As stated, the Additional Insured Endorsement extends coverage to each individual unit owner of the BeachGate Condos, "but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises **which is not reserved for that unit owner's exclusive use or occupancy**." Dkt. 4-2 at 41 (emphasis added).

In his insurance claim, Benites argued that he qualified as an additional insured under the endorsement because the balcony was not under his exclusive use, but rather "is a General Common Element for which The Association is responsible." Dkt. 2-4 at 12. In support of that argument, Benites relied on the definitions of "Limited Common Elements" and "General Common Elements" contained in the BeachGate HOA's Declarations and Bylaws.

Western contends that Benites does not qualify as an additional insured under the endorsement because the claims in the Underlying Suit arise "solely out of the maintenance, ownership or repair of his personal balcony" that is "subject to his exclusive use or occupancy." Dkt. 10 at 7. Western contends that the balcony could not be considered a General Common Element under the Declarations and Bylaws because it is a private balcony attached to Benites' private condominium exclusively for his use. Western moves for summary judgment on this basis.

Benites did not file a timely response to Western's Motion for Summary Judgment and relies on his arguments for coverage asserted in his Motion for Summary Judgment. *See* Dkt. 14 at 1. In his Motion, Benites does not explain how the balcony attached to his unit was not reserved for his exclusive use or occupancy. Instead, he attempts to show coverage by focusing only on the allegations in the Underlying Suit, disregarding both the Policy and the relevant Declarations and

7

Bylaws. Benites alleges that Western's duty to defend is "triggered" in this case because the Underlying Plaintiffs allege that "Defendants managed, occupied, and or owned the premises where Plaintiffs[ ] were injured," and that "Defendants were 'possessors' of the property on July 8, 2017 and owned, operated and exercised control over same." Dkt. 4 at 9; Dkt. 4-1 ¶ 6.1. Benites argues: "These allegations, if true, negate the possibility that the same deck was reserved for Benites' exclusive use." Dkt. 4 at 9.

Benites does not address the undisputed allegations in the Underlying Petition that he is the sole owner of Unit 121. Dkt. 4-1 ¶ 2.3. Thus, the allegations in the Underlying Petition do not conclusively show whether or not coverage exists in this case. Because the Underlying Petition does not contain facts necessary to determine whether Benites is an insured under the Policy, the Court may consider extrinsic evidence. *See Monroe*, 640 S.W.3d at 202 (clarifying that Texas law permits consideration of extrinsic evidence under these circumstances, provided that "the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved").

As part of his ownership agreement with BeachGate, Benites agreed to certain provisions in the BeachGate Condominium Declarations and Bylaws. Dkt. 10-2. Restrictions in condominium declarations and bylaws are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). The Declarations defines "General Common Elements" as "the Land, Buildings, Common Rooms and all other improvements located on the Project Tract except for those portions defined in this Declaration as a Unit or Limited Common Element." Dkt. 10-2 at 2. The Declarations further state that General Common Elements include:

    a.   The Project Tract;
    b.   The foundation, load bearing walls, and roof of the buildings;

8

    c. As shown on the Plat, the Laundry and Employee Quarters behind Building I; the Office, Laundry and Maintenance facilities in Building II, the Maintenance room in Building III; the Manager's Unit, Office, and Reception Area (the "Rental Office"), Storage, Laundry, Kitchen, and Meeting Room in Building IV; and Laundry Room, Maintenance/Storage, and Meeting Room in Building V;

    e. [Sic] All walkways; grounds; employee quarters, well and fish cleaning facilities, swimming pools; and all non-designated parking spaces;

    f. The non-exclusive right to use all Beachgate common facilities; and

    g. All other elements desirable or rationally of common use or necessary to the existence, upkeep, and safety of the Project Tract.

*Id.* at 6. Thus, the Declarations do not state that balconies are not included as General Common Elements.

The Declarations define "Limited Common Elements" as "those items, fixtures, and improvements allocated by the Declaration for the exclusive use of a Unit." *Id.* at 3. The Bylaws further provide that each owner is responsible for maintenance and repair of the unit's Limited Common Elements:

> Each Owner is responsible for the cost of non-casualty maintenance, repair, and replacement of the Unit's Limited Common Elements and the Owner's Personal Property. Each Owner shall also be responsible for the cost of repair and replacement of any portion of the Owner's Unit damaged as result of the Owner's failure to properly maintain the Unit's Limited Common Elements.
>
> (a) Each Owner shall keep his Unit, that portion of the Unit's limited Common Elements including the heating and air conditioning equipment servicing the Unit, and all other equipment, appliances, and appurtenances in good order, condition, and repair and in a clean and sanitary condition, and shall do all redecorating and painting which may at any time be necessary to maintain the good appearance and condition of the Unit. . . .

Dkt. 10-2 at 34. While the Declarations and Bylaws do not define "appurtenance," that term is commonly defined as "[s]omething that belongs or is attached to something else." BLACK'S LAW DICTIONARY (11th ed. 2019). The Declarations further provide that:

> Limited Common Elements . . . are those rationally of use for only one Unit, and shall include exterior doors and windows, the plumbing & pipes, air conditioning compressor and all air conditioning and heating equipment, and *other structures and equipment servicing a particular Unit* other than the Owner's Personal Property whether located inside or outside of the Unit's boundaries.

Dkt. 10-2 at 6 (emphasis added).

Although the Declarations and Bylaws do not specifically state that balconies are considered limited common elements, Section 82.052 of the Texas Property Code (the Uniform Condominium Act) states that "balconies, patios, and exterior doors and windows or other fixtures designed to serve a single unit, but located outside the unit's boundaries, are limited common elements allocated exclusively to that unit." TEX. PROP. CODE ANN. § 82.052(4) (West 1994).[2] In addition, the statute states that: "The boundaries of an apartment in a condominium regime are the interior surfaces of the apartment's perimeter walls, floors, and ceilings and the exterior surfaces of the apartment's balconies and terraces." *Id.* at § 81.105.

Texas courts have found that balconies or terraces attached to condominium units are considered limited common elements of the property, not general common elements. *See Nga Ly v. Nguyen*, No. 01-14-00077-CV, 2015 WL 1263062, at *4 (Tex. App.—Houston [1st Dist.]

---

[2] In contrast, the Texas Property Code states that general common elements include land on which the building is erected; foundations, bearing walls and columns, roofs, halls, lobbies, stairways, and entrance, exit, and communication ways; basements, flat roofs, yards, and gardens, except as otherwise provided; premises for the lodging of janitors or persons in charge of the building, except as otherwise provided; compartments or installation of central services such as power, light, gas, water, refrigeration, central heat and air, reservoirs, water tanks and pumps, and swimming pools; and elevators and elevator shafts, garbage incinerators, and all other devices and installations generally existing for common use. TEX. PROP. CODE ANN. § 81.002(6) (West 1984); *see also Dutcher v. Owens*, 647 S.W.2d 948, 949-50 (Tex. 1983).

Mar. 19, 2015, no pet.) (holding that fenced-in terrace attached to condominium was considered unit owner's property and was not part of the "common elements of the condominium complex"); *Manns v. Sw. Properties Council of Co-Owners*, No. 13-99-813-CV, 2000 WL 35729666, at *1-2 (Tex. App.—Corpus Christi-Edinburg Aug. 10, 2000, no pet.) (rejecting condominium owners' argument that balconies were common elements under condominium declarations, concluding that better interpretation was that balconies were "non-common or private elements" of the property).

Based on Texas law, the Underlying Petition, and the BeachGate HOA's Declarations and Bylaws, the Court concludes that Benites' private balcony attached to his condominium unit was reserved for his "exclusive use or occupancy." Dkt. 4-2 at 41. As Western reasoned in its claim denial letter:

> To suggest that the balcony attached to your client's condominium unit is a common element would be an incorrect classification. No one including your client, would ever expect that anyone could use his personal balcony for their own enjoyment. The balcony attached to his unit is exclusively his. To suggest otherwise means that any person living in the community has the right to enter your client's front door, walk through his unit, and then open the balcony doors to do whatever they see fit.

Dkt. 2-4 at 9.

## B.  No Duty to Defend or Indemnify

Because Benites is not an additional insured under the Policy, Western has no duty to defend him in the Underlying Suit. In addition, Western has no duty to indemnify for the "same reason" it has no duty to defend: Benites is not an "additional insured" under the Policy and therefore is not entitled to coverage. *Griffin*, 955 S.W.2d at 84 (holding that duty to indemnify may be resolved at summary judgment if the same reasons that negate duty to defend likewise negate duty to indemnify); *see also Texas Mut. Ins. Co. v. Essex Ins. Co.*, No. A-16-CA-00485-SS, 2016 WL 8919377, at *4 (W.D. Tex. Sept. 28, 2016) (holding that insurer had no duty to indemnify for the

same reason it had no duty to defend—the plaintiff was not an "insured" under the policy); *State Farm Fire & Cas. Co. v. Neuman*, 186 F. Supp. 3d 643, 656 (W.D. Tex. 2016) (same). Regardless of the facts or damages alleged against Benites in the Underlying Suit, the Policy will never require Western to pay Benites for any costs incurred in that suit. Accordingly, Western is entitled to summary judgment in its favor regarding the duty to defend and the duty to indemnify.

### C. Requests for Defense Counsel and Attorneys' Fees

In his third-party complaint against Western, Benites seeks a declaration that "he is entitled to counsel of his own choosing and that Western World shall pay for said counsel." Dkt. 2-4 ¶ 15. Benites also asserts a claim for attorney's fees incurred in bringing this action and in defending himself in the Underlying Suit. *Id.* ¶ 16.

Because Western is under no duty to defend or indemnify Benites, Western has no duty to pay for Benites' defense counsel or related attorneys' fees in the Underlying Suit. *See Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 103 (5th Cir. 2014) (holding that insured was not entitled to damages, attorneys' fees and costs where insurer had no duty to defend); *Great Am. Ins. Co. v. Beyond Gravity Media, Inc.*, 560 F. Supp. 3d 1024, 1039, n.73 (S.D. Tex. 2021) (holding that plaintiff was not entitled to declaratory relief and attorneys' fees and expenses where insurer was under no duty to defend or indemnify). Similarly, Western is not entitled to attorneys' fees for bringing this lawsuit. *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 572 (S.D. Tex. 2012) ("Because Mid–Continent has not breached its duty to defend, Plaintiffs are not entitled to attorneys' fees."), *aff'd*, 756 F.3d 388 (5th Cir. 2014).

### D. Conclusion

Because Benites is not an additional insured under the Policy, Western is under no duty to defend or indemnify Benites in the Underlying Suit. Accordingly, Western is entitled to summary judgment in its favor.

## IV. Recommendation

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff Xavier Benites' Motion for Summary Judgment (Dkt. 4), **GRANT** Defendant Western World Insurance Company's Motion for Summary Judgment (Dkt. 10), and enter judgment in favor of Defendant.

The Court **FURTHER ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 18, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE